The order below is hereby signed.

Signed: March 30 2022



Elizabeth L. Gunn
U.S. Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF COLUMBIA

| | |
|---|---|
| In re:<br><br>**Sherry Easley,**<br>       **Debtor.** | Case No. 21-00196-ELG<br><br>Chapter 13 |

## MEMORANDUM OPINION AND ORDER IMPOSING
## SANCTIONS PURSUANT TO FED. R. BANKR. P. 9011(c)

On November 4, 2021, the Court held a hearing (the "Motions Hearing") on, *inter alia*, the chapter 13 trustee's *Motion to Dismiss Case with Prejudice for Bad Faith* (ECF No. 35) (the "Motion to Dismiss") and *Motion for Order to Justify and Disgorge Attorney Fees* (the "Motion to Disgorge") (ECF No. 38) (collectively, the "Trustee's Motions"). At the Motions Hearing, the Court raised questions regarding issues related to the representation of the above-captioned debtor (the "Debtor") by counsel Sari Kurland ("Counsel") raised by the Trustee's Motions. Due to the Court's questioning and other factual issues related to the Trustee's Motions, the Motions Hearing was continued to December 8, 2021. After the Motions Hearing, on November 10, 2021, the Court entered its *Order to Show Cause Why Sanctions Should Not Be Imposed for Failure to Comply with Federal Rule of Bankruptcy Procedure 9011(b)* (ECF No. 60) (the "Show Cause Order"), which ordered Counsel to show cause as to whether there were violations of Federal Rule of Bankruptcy Procedure 9011(b) (the "Bankruptcy Rules," and each individually a "Bankruptcy

Rule") in this case. The Show Cause Order was scheduled for a hearing in January and ultimately combined with the continued Motions Hearing (the "Show Cause Hearing"). On December 1, 2021, Counsel filed a written response to the Show Cause Order.

At the combined Motions Hearing and Show Cause Hearing on January 21, 2022,[1] counsel for the chapter 13 trustee and Counsel indicated that they were in negotiations as to resolution of the Trustee's Motions. A *Consent Order on Trustee's Motion to Justify and Disgorge Fees* (ECF No. 73) (the "Consent Order") was submitted by the parties and entered by the Court on February 2, 2022. However, the agreement set forth in the Consent Order neither addressed nor resolved, the Court's pending Show Cause Order. After entry of the Consent Order, the parties requested the Court cancel the continued hearing and rule on the Show Cause Order without further argument.

Upon review of the docket, the pleadings in this case, the response to the Show Cause Order filed by Counsel, the arguments, statements, and representations of Counsel at the Motions Hearing, and for the reasons set forth below, the Court finds that Counsel's conduct in this case violated Bankruptcy Rule 9011(b) and sanctions are appropriate. Therefore, taking into consideration the agreed disposition of the Trustee's Motion to Disgorge, and for the reasons set forth herein, the Court orders sanctions against Counsel and the Kurland Law Firm in the amount of $2,200.

## I.    Background

On July 22, 2021 (the "Petition Date"), the Debtor, by Counsel, commenced the above-captioned case by filing a voluntary chapter 13 petition (the "Initial Petition") and no other

---

[1] The hearings were originally scheduled for dates earlier in January but were continued and consolidated upon the consent of the parties.

documents.[2] The Initial Petition is rife with errors on its face, beginning with an incorrect designation of the Bankruptcy Court in which the case was filed – listing the District of Maryland, not the District of Columbia. ECF No. 1. Given the proximity of this Court to the District of Maryland, this single error is one that on its own would not raise concern with the Court; however, the document contained numerous other material errors despite this being the third case filed by the Debtor in this Court in less than two (2) years.

An examination of part 1 of the Initial Petition shows two material issues. Question 5 of the Initial Petition stated that the Debtor lived at 2101 Q St. S.E., Washington, DC 20020 (the "Q Street Property") but had a mailing address of 4701 Kenmore Ave #11017, Alexandria, VA 22304. ECF No. 1. Question 6 indicated that the Debtor had resided in this District more than any other over the past 180 days. *Id.* However, at the Motions Hearing, it was disclosed both that the Q Street Property is uninhabitable and that the Debtor did not reside therein. In fact, in a case filed in this Court on April 29, 2021 (84 days prior to the Petition Date in this case), the Debtor listed the address where she resided as 4701 Kenmore Ave Unit 1017, Alexandria, VA 22304 (the "Kenmore Avenue Property"). *See In re Easley*, Case No. 21-00116-ELG (Bankr. D.D.C. Apr. 29, 2021), ECF No. 1. Further, the Kenmore Avenue Property was the only address used by the Debtor in her case filed in this Court in 2019. *See In re Easley*, Case No. 19-00150-SMT (Bankr. D.D.C. March 13, 2019), ECF No. 1. Thus, the Court finds that Questions 5 and 6 were inaccurate as to both the Debtor's actual mailing address (listing the wrong unit number) *and* how long (if at all) she resided at the Q Street Property or otherwise in this district. Based upon the Debtor's prior filings, it is clear to the Court that the Debtor certainly did not reside in this District "more than any other over the past 180 days" prior to the Petition Date as stated in Question 6.

---

[2] All code section references herein shall be to Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") unless otherwise indicated.

These were not the only significant errors in the Initial Petition. The response to Part 2, Question 9—"Have you filed for bankruptcy within the last 8 years?"—was blank. This material omission is particularly concerning to the Court because a basic PACER search of the Debtor's name or social security number shows that the Debtor had three (3) prior cases within the 8 years prior to the petition date, two of which were filed in this Court as described above.[3] ECF No. 1. Part 5, Question 15 of the Initial Petition—"Tell the Court whether you have received a briefing about credit counseling"—was also blank, not disclosing whether the Debtor had taken a pre-petition credit counseling course nor referencing the still-valid certification from her most recent previous case. ECF No. 1. Again, even a cursory review of the Debtor's filing history and former case docket would have provided information regarding the existing, still valid, certificate of credit counseling. In each of these instances the Initial Petition was not just inaccurate, but incomplete despite information readily available to Counsel in CM/ECF. While the Court recognizes the reasoning and/or necessity, at times, to file a "skeletal" or "bare-bones" petition and supplement the petition at a later date, Counsel's filings in this case fail to meet the minimal standards of care and diligence for an acceptable skeletal petition.

Beyond the errors and omissions contained in the Initial Petition itself, and because it was the *only* document filed on the Petition Date, the documents commencing this case failed to meet other case-initiation requirements, including disclosure of the Debtor's complete social security number or information regarding the pre-petition credit counseling certificate. *See* Bankruptcy

---

[3] On July 23, 2021, the clerk of court entered a disclosure on the docket reflecting the past filings by the Debtor, as follows:
> Case Number 19-00150, Chapter 13 filed in District of Columbia Bankruptcy Court on 3/13/2019, Dismissed for Other Reason on 8/14/2019; Case Number 21-00116, Chapter 13 filed in District of Columbia Bankruptcy Court on 4/29/2021, Dismissed for Other Reason on 5/14/2021, Case Number 05-11182, Chapter 7 filed in Virginia Eastern Bankruptcy on 4/4/2002, Standard Discharge on 7/12/2005.

Rule 1007. In addition, despite later pleadings and representations to the Court at the Motions Hearing that this case was filed to stop an imminent foreclosure sale of the Q Street Property, the list of creditors attached to the Initial Petition included only a single creditor, "BWW Law Group, LLC."[4] *Id.* Once again, a cursory review of the Debtor's April 2021 case reveals a creditor list of at least 13 creditors, including BWW Law Group, LLC. Case No. 21-00116-ELG, ECF No. 1 at 14-15. Nothing in the record suggests that the other 12 creditors' obligations were satisfied or otherwise paid in the short period between the dismissal of the April 2021 case and the Petition Date herein, and therefore the creditors should have been included in the Debtor's list of creditors.

On July 23, 2021, following the filing of the deficient Initial Petition and case opening documents, the clerk of court entered the following four orders providing Counsel and the Debtor the statutorily required periods to cure both (i) the errors and omissions described above and (ii) others more commonly associated with a skeletal petition:

- Order to File Form 121 Statement of Social Security Number (ECF No. 3) with a compliance date of July 30, 2021.
- Order to Show Cause Why Case Ought Not be Dismissed for Failure to File the Pre-Petition Date Credit Counseling Certificate (ECF No. 4) with a compliance date of July 30, 2021.
- Order to File Required Documents (ECF No. 5) indicating that the Debtor needed to file Schedules A/B-J (Official Form 106), Copies of All Payment Advices or Other Evidences of Payment/Statement That No Evidence of Payment Exists; Chapter 13 Plan of Reorganization; Statement of Your Financial Affairs (Official Form 107); and Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period all with a compliance date of August 5, 2021.
- Order Directing Debtor's Attorney to File Local Bankruptcy Rule 2016-2(a) Statement (Local Form No. 10) (ECF No. 6) with a compliance date of August 5, 2021.

On July 29, 2021, Counsel filed an amended voluntary petition (ECF No. 16) (the "Second Petition"). The Second Petition included the correct court designation on the first page and

---

[4] Although never specifically set forth, it appears to the Court that BWW Law Group, LLC was the law firm conducting the foreclosure stale on behalf of Wilmington Savings Funds Society ("Wilmington Savings"), the secured lender on the Q Street Property.

answered Question 15 to reflect that the Debtor had received a pre-petition credit briefing. Second Pet., ECF No. 16. Counsel also filed the *Statement of Your Social Security Number* (ECF No. 17), a *Certificate of Credit Counseling* (ECF No. 18), a *Disclosure of Compensation of Attorney for Debtor* on the correct local form (ECF No. 19), and a *Response to the Order to Show Cause* (ECF No. 20). The Certificate of Credit Counseling indicated that the Debtor completed the class on "July 28, 2021 at 12:51 o'clock PM CDT," six days *after* the Petition Date. ECF No. 18.[5] The Statement of Social Security Number and Disclosure of Compensation of Attorney resolved the clerks' orders on the related deficiencies but failed to resolve all of the issues with the credit counseling certificate or the unfiled statements, schedules, and other forms. In addition, the Second Petition continued to contain material errors. Despite having been put on actual notice of the Debtor's prior filings by the Court's docket entries, Question 9 on the Second Petition was again blank as to the Debtor's filings in the last 8 years. As filed, the Certificate of Credit Counseling was dated post-petition and did not either (i) reference the certificate filed in the April 2021 case or (ii) seek an exception under § 109(h)(3). *Id.* But-for the certificate in the April 2021 case, the Debtor would not have been an eligible debtor when this case was filed based upon the Certificate of Credit Counseling filed on July 29, 2021. *See* 11 U.S.C. § 109(h)(1) (requiring an individual to have received in the 180-day period prior to the petition date a credit counseling briefing). It was not until August 6, 2021, that Counsel filed a Second Amended Certificate of Credit Counseling with the certificate from the April 2021 case such that the Debtor was eligible to be a debtor. ECF No. 24.

---

[5] The Certificate of Credit Counseling indicated that the Debtor had filed in the Eastern District of Virginia. This was corrected by the filing of an Amended Certificate of Credit Counseling on July 30, 2021. However, both certificates indicate that the Debtor had received the required course after the Petition Date.

On August 4, 2021, Counsel filed a *Motion to Extend Deadline to File Schedules or Provide Required Information* (the "Motion to Extend Time") seeking an extension of fourteen (14) days through and including August 19, 2021 to file the remaining missing required documents in this case. The Court granted the Debtor's motion to extend time.[6] Notwithstanding the Motion to Extend Time, on August 6, 2021, Counsel filed a Second Amended Voluntary Petition (the "Third Petition"). ECF No. 25. The Third Petition finally answered Question 9 accurately and disclosed the two previous chapter 13 cases the Debtor filed in this Court that were listed on the docket on July 23, 2021, but continued to indicate in Question 6 that in the 180 days prepetition the Debtor had resided in this district longer than in any other district. *Id.* In addition, with the Third Petition, Counsel included a list of creditors with ten (10) entries, nine (9) listed for the first time in this case. *Id*. Despite listing the new creditors, there is no indication on the docket that Counsel ever served the added creditors with notice of this case.

On August 18, 2021, the chapter 13 trustee indicated that neither Counsel nor the Debtor appeared at the August 16, 2021 § 341 first meeting of creditors and as a result, the chapter 13 trustee noted her intent to file a motion to dismiss the case. Docket Entry Sept. 18, 2021. Later that same day, the Debtor, by Counsel, filed the remaining required case opening documents including a Third Amended Voluntary Petition (the "Fourth Petition") (ECF No. 27), a Third Amended Certificate of Credit Counseling (ECF No. 28), Schedules A/B-J (ECF No. 29) (the "Schedules"), the Statement of Financial Affairs (ECF No. 30), Form 122C-2 (ECF No. 31) (the "Means Test"), and a Chapter 13 Plan (ECF No. 32).

---

[6] Due to a delay in the submission of an appropriate order by Counsel granting the Motion to Extend Time, the order granting the extension was not entered until August 26, 2021 although the documents were filed prior to the requested extension date.

While the August 18, 2021 filings finally addressed many (but certainly not all, as described below) of the errors and omissions associated with the case opening documents, they themselves contained new errors and inconsistencies. For the first time in the Fourth Amended Petition, the Debtor modified her answer to Question 6 indicating that the Debtor chose to file in this District due to "real property ownership interest in Washington, DC," and not due to residing in the District for longer than any other district during the 180 days pre-petition. In the schedules themselves, Schedule C (Exemptions) was entirely black, Schedules D/E/F included only two (2) creditors despite having listed 10 entities on the creditor list filed with the Third Petition, and Schedule G disclosed a "residential lease" for the Kenmore Avenue Property in Virginia, but failed to provide any further details including length of lease, the property address, or any other information.[7] *See* Schedules A/B-J at 9, ECF No. 29. The Means Test disclosed that the Debtor has above-median income for a household size of one (1), and therefore the required commitment period for her chapter 13 plan would have to be either five (5) years or 100 percent payment to all creditors. Notwithstanding this disclosure, the Debtor's proposed Chapter 13 Plan included payments of $0.00 for two months, and $100.00 for thirty-four (34) months, for a total commitment period of three (3) years and total plan funding of only $3,400.00. In addition, the proposed Chapter 13 Plan for the first time listed or disclosed the secured lender on the Q Street Property as BSI Financial and proposing a treatment, per the nonstandard provision of Section 10, that the "Debtor is in the process of a short sale of property located at 2101 Q St. S.E., Washington, D.C. 20020." ECF No. 32. The proposed Chapter 13 Plan did not describe or otherwise disclose whether the Debtor was personally liable on the loan to BSI Financial, and, if so, how the Debtor would treat or classify any unsecured portion of the secured claim as a result of the short sale. The hearing on

---

[7] Given the Debtor's past filings and the representations at the hearing, the Court infers that the rental lease was for the Debtor's principal residence where she resided at all times during this Case.

confirmation of the proposed Chapter 13 Plan was continued twice from the original date in September 2021 to November 4, 2021, the continued date of the Motions Hearing.

On November 3, 2021, the eve of the Motions Hearing, the Debtor, by Counsel, once again filed more amended case opening documents including Amended Schedules A/B, C, D, E/F and Official Form 106Dec., Amended List of Creditors and Mailing Matrix to Add Previously Unlisted Entities (the "Amended Schedules"). *See* ECF No. 49. The Amended Schedules disclose, for the first time, a second vehicle of the Debtor, a Chevrolet Avalanche (*Id.* at 2) and a lien on a retirement account in Schedule I, but no other disclosures regarding any retirement account. *See* Schedules A/B-J at 16, ECF No. 49. The Court notes that the schedules filed in the Debtor's first case, 19-00150, at ECF No. 21, disclosed a retirement account valued at $200,000 found nowhere in any of the schedules in this case, despite disclosing that she contributes $324.57 a month to a retirement account and repays $798.11 a month on a loan against a retirement account.[8] Schedules A/B-J at 16, ECF No. 29. In the Amended Schedule C filed with the November 3, 2021 amendments, the Debtor for the first time claimed exemptions under the laws of the District of Columbia for which she is ineligible because she has resided in the Commonwealth of Virginia for at least the last three (3) years. *See* Statement of Financial Affairs at 1, ECF No 30.

In the midst of all filings of the Debtor, on October 6, 2021, Wilmington Savings, FSB d/b/a Christiana Trust filed a *Motion for Relief from Stay and Request for Imposition of an Equitable Servitude as to the Q Street Property* (the "Stay Motion"). ECF No. 43. The hearing on the Stay Motion was continued to the same date as the Motions Hearing.

a. The November 4, 2021 Hearing

---

[8] It is possible that this retirement account is the insurance policy disclosed in the present case.

At the Motions Hearing on November 4, 2021, in presenting the Trustee's Motions, counsel for the chapter 13 trustee elaborated on Counsel's various shortcomings in the Debtor's case, including failure to convey the necessary § 521 documents to the trustee, failure to provide notice of the § 341 meeting to any creditors, and failure to attend or request a continuation of the initial § 341 meeting. During argument on the Stay Motion, counsel for the secured lender disclosed to the Court that his client did not learn about this case until a post-petition hearing was held in the state court foreclosure case on the Q Street Property. Promptly thereafter, the Stay Motion was filed. In response to the Stay Motion arguments, Counsel made various representations about the status of the Q Street Property, including that the property was uninhabitable and that the Debtor had not lived there for several years. Counsel further explained that the Debtor had retained a realtor in the month prior to the Motions Hearing and obtained a contract for a short sale of the property. Notably, despite the passage of a month and apparently successful marketing efforts, there was never an application to employ the realtor filed by the Debtor. When questioned as to why an application had not been promptly filed, Counsel was unable to provide a substantive or otherwise adequate explanation.

In addressing the chapter 13 trustee's concerns with her handling of the case raised in the Motion to Disgorge Fees, Counsel did not offer any evidence and instead relied upon her argument, consisting primarily of partial contrition paired with various excuses. Counsel explained the failure of any party to attend § 341 meeting by stating she was out of town but nevertheless unable to attend the virtual § 341 meeting via Zoom. Counsel further went on to place blame on her office staff for failing to convey her request for a continuance of the § 341 meeting to the chapter 13 trustee prior to the meeting. Counsel was unable to explain how her "being out of town" prevented

her attendance at a § 341 held via Zoom or to personally contact the chapter 13 trustee's office. The Court finds Counsel's explanations neither satisfactory nor completely credible.

Further, and of crucial importance with respect to the stated reason for the filing of this case (i.e., to stop a foreclosure), Counsel never filed a motion to extend the automatic stay under § 362(c)(3)(B). As such, under § 362(c)(3)(A) the automatic stay with respect to the Debtor terminated on August 23, 2021, 17 days after Counsel filed the amended petition disclosing the Debtor's prior cases. When questioned about why such a basic and standard motion was not filed in order to further the stated goal of the Debtor to protect the Q Street Property, Counsel once again was unable to provide the Court any explanation, justification, or reason for the failure. Notably, it appears that Counsel either did not recognize or otherwise understand the need to file such a motion or discuss whether such a motion was appropriate with the Debtor. There was simply a failure to review or address the issue despite the Debtor's clear desire to retain her interest in the Q Street Property. Thus, the Court finds that the failure to file any motion to extend the stay is completely incongruent with Counsel's stated reason for filing this case as a "skeletal petition" with such little preparation or other information.

At the conclusion of the November 4, 2021 hearing, the Court granted the secured lender's motion for relief from the automatic stay and imposition of equitable servitude,[9] continued the hearing on the Trustee's Motions for Counsel to file supplemental information, and denied confirmation of the Debtor's Chapter 13 Plan without leave to amend. The Court also indicated that it would be issuing a show cause order based upon Counsel's conduct in the case beyond those issues raised in the Trustee's Motions.

b. *The Show Cause Order*

---

[9] The order granting the Stay Motion was entered on November 5, 2021. ECF No. 56.

The Court issued its Show Cause Order on November 10, 2021, which ordered Counsel to provide further documentation in support of her professional fees collected from the Debtor and to show cause at a hearing to be held on January 11, 2022 as to why she should not be sanctioned as a result of her actions in this case. On November 15, 2021, Counsel submitted her *Support Document* (ECF No. 64) ("Support Document") indicating her time spent on various tasks related to the Debtor's bankruptcy filing. Additionally, Counsel submitted her *Response to Order to Show Cause* (ECF No. 65) (the "Response"). The Response largely offers vague statements including "the lack of time to file the initial case, the complexity of the facts, confusion regarding the information in the previous cases and inadvertent errors" as explanation/justification for the myriad of inaccurate filings and other deficiencies in this case. Response at 5, ECF No. 65. Due to a conflict on the Court's calendar, the January 11, 2022 hearing on the Show Cause Order was continued to January 21, 2022.

On January 21, 2022, the Court called its hearing on the Trustee's Motions and the Order to Show Cause. At that time, Counsel and the chapter 13 trustee represented that they were close to a settlement on the issues raised by the Trustee's Motions. Therefore, the Court consented to a continuance of the hearing to February 2, 2022. On February 2, 2022, the Court entered the Consent Order between Counsel and the chapter 13 trustee, which required Counsel to disgorge fees to the Debtor in this case in the amount of $2,725 no later than February 11, 2022. Upon the Court's entry of the Consent Order, the parties requested the Court cancel the continued hearing and rule on the Show Cause Order without further argument. Therefore, the sole issue remaining before the Court is the Show Cause Order.

## II.    Discussion

*i.    Legal Standard*

The Court has the authority to regulate the conduct of the attorneys appearing before it. *See In re T.H.*, 529 B.R. 112, 133 (Bankr. E.D. Va. 2015); *In re Shelton*, 428 B.R. 457, 459 (Bankr. N.D. Ohio 2010); *Office of the United States Trustee v. Jones (In re Alvarado)*, 363 B.R. 484, 492 (Bankr. E.D. Va. 2007). The Court's regulation of attorneys is guided and supported, in part, by Bankruptcy Rule 9011(b), which provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed. R. Bankr. P. 9011(b). Where an attorney violates any subsection of Bankruptcy Rule 9011(b), Bankruptcy Rule 9011(c) allows a court, in its discretion, to impose sanctions for that conduct. *Raymond Prof'l Group v. William A. Pope Co. (In re Raymond Prof'l Group)*, 420 B.R. 420, 461 (Bankr. N.D. Ill. 2009); *see also In re Freeman*, 540 B.R. 129, 138-39 (Bankr. E.D. Pa. 2015); Fed. R. Bankr. P. 9011(c). A court may impose sanctions on its own initiative after entering "an order describing the specific conduct that appears to violate [9011(b)] and directing an attorney,

law firm, or party to show cause why it has not violated subdivision [9011(b)] with respect thereto." Fed. R. Bankr. P. 9011(c)(1)(B). A court's order imposing sanctions "shall describe the conduct determined to constitute a violation of this rule and explain the basis for the sanction imposed." Fed. R. Bankr. P. 9011(c)(3).

In deciding whether to exercise its discretion to impose sanctions on any party, the Court is guided by the purpose of Bankruptcy Rule 9011 and Civil Rule 11 – to "deter repetition of such conduct or comparable conduct by others similarly situated." Fed. R. Bankr. P. 9011(c)(2); *Desiderio v. Parikh (In re Parikh)*, 508 B.R. 572, 584 (Bankr. E.D.N.Y. 2014). Bankruptcy courts weigh several factors in deciding whether to impose sanctions under Bankruptcy Rule 9011, including, but not limited to, whether the attorney's action was willful, if the at-issue conduct is a part of a pattern, and the effect the conduct had on the litigation process. *Lafayette v. Collins (In re Withrow)*, 405 B.R. 505, 514 (1st Cir. B.A.P. 2009) (citing *In re Thomson*, 329 B.R. 359, 362 (Bankr. D. Mass. 2005)). In this case, the Court finds that the repeated and obvious errors and material misstatements in documents filed with the Court, coupled with Counsel's failure to offer anything other than generalized excuses in explanation for these errors, support an imposition of sanctions against Counsel.[10]

Representation of a consumer debtor in a bankruptcy case involves certain essential duties including assisting debtors to file the necessary petition, schedules, statements, and pleadings, and advising their clients in complying with their duties under § 521. *See In re DeSantis*, 395 B.R. 162, 169 (Bankr. M.D. Fla. 2008). In completion of these duties, Bankruptcy Rule 9011(b) requires that the attorney perform a reasonable investigation into the circumstances surrounding pleadings filed

---

[10] Much like the "death of a thousand paper cuts," each error in this case individually may not have been fatal, but when considered in the totality, add up to a failure to act in a reasonable manner under the circumstances. As Sir Arthur Conan Doyle said in the *Adventures of Sherlock Holmes*, "the little things are infinitely the most important." *A Case of Identity*, in *Adventures of Sherlock Holmes* 63 (New York, Harper & Brothers 1892).

in the Court and verify the foundation for the contentions therein. Fed. R. Bankr. P. 9011(b)(3); *In re Redante*, 579 B.R. 354, 362 (Bankr. E.D. Pa. 2018). As a result, counsel for a debtor is expected to exercise significant care in ensuring the completeness and accuracy of a petition, statements, and schedules, the same as any pleading in federal court. *See In re Tabor*, 583 B.R. 155, 185 (N.D. Ill. 2018). In preparing the necessary bankruptcy documents, an attorney "may not take his client's word concerning previous bankruptcy filings when it is so easy to check the Court's records." *In re Oliver*, 323 B.R. 769, 774 (Bankr. M.D. Ala. 2005); *see also In re Withrow*, 405 B.R. at 512; *In re Alessandro*, 2010 Bankr. LEXIS 3116 (Bankr. S.D.N.Y. 2010) (ordering disgorgement of fees from attorney who accepted debtor's word and failed to check PACER to find client's five previous bankruptcy filings prior to filing an emergency new case to stop a foreclosure). The written record in this case is clear that Counsel failed to meet a basic standard of inquiry as required by Bankruptcy Rule 9011(b) and, therefore, the Court issued the Show Case Order to allow Counsel the opportunity to address the Court's concerns outlined therein before the imposition of sanctions.

    *ii.    Sanctions are Appropriate in this Case*

The Court does not take the imposition of sanctions lightly. Furthermore, the Court has considered the resolution of the Motion to Disgorge with the chapter 13 trustee in contemplation of the imposition and scope of the sanctions herein. However, despite the resolution with the chapter 13 trustee, and as set forth above, this Court's Show Cause Order raised issues not limited solely to those raised by the Trustee's Motions. In applying the above legal standards to Counsel's filings and conduct in this case, it is abundantly clear to the Court that Counsel violated Bankruptcy Rule 9011 by failing to: verify the Debtor's past filing history through a pre-petition PACER search; determine whether the Debtor was eligible to be a Debtor by confirming the existence of a

valid pre-petition credit counseling certificate; provide notice to all creditors of this case; file accurate pleadings including the petition, disclosures of assets and liabilities, exemptions, and basic information as to the Debtor such as her address; attend or timely request a continuance of the § 341 meeting (and blame such failure on staff which Counsel supervises); and file a motion to extend the automatic stay (not just timely, but at all) despite the stated goal of this case being to protect an interest in real property.

In the Response, Counsel asserts that her failure to conduct any kind of pre-petition inquiry into the Debtor's eligibility to file bankruptcy was due to the emergent nature of the Debtor's filing. However, the emergent nature of a client's petition does not relieve an attorney from ensuring the legality or accuracy of filing under the Bankruptcy Code. *In re Allessandro*, 2010 Bankr. LEXIS 3116 at *10 (sanctions imposed due to attorney's failure to conduct PACER search prior to filing emergency petition to stop foreclosure warranted sanctions); *In re Thomas*, 612 B.R. 46, 67 (Bankr. E.D. Pa. 2020) (noting that exigent circumstances do not excuse counsel from conducting a reasonable inquiry); *In re Schemelia*, 607 B.R. 455, 461 (Bankr. D.N.J. 2019) (reasonable inquiry still required to file debtor's schedules even during an emergency situation); *In re Parikh*, 508 B.R. at 593 (independent verification of information provided by debtor necessary even in emergent petition). The Debtor had filed for bankruptcy three times prior to the initiation of this case, something that even the most cursory of investigations would have revealed. Indeed, the Debtor's last bankruptcy petition was filed on April 29, 2021,[11] just three months prior to the instant case. Counsel's failure to conduct a simple PACER search to ensure the accuracy of filings in this Court could be by itself, *without more*, sanctionable under Bankruptcy Rule 9011(b). *See In re Withrow*, 405 B.R. at 512. However, in this case the Court does not have to determine

---

[11] *In re Sherry Easley*, No. 21-0166 (Bankr. D.D.C. 2021).

whether solely failing to conduct a pre-petition PACER search is sanctionable as the failures herein occurred over a period multiple months and multiple amendments. Here, the failure to conduct a pre-petition PACER search and the material errors resulting therefrom are just one factor in the Court's analysis of the totality of the circumstances herein.

District of Columbia Rule of Professional Conduct 5.3 ("RPC 5.3") charges a supervisory attorney with ensuring that non-lawyer staff employed by the attorney or her firm comply with the professional obligations of the attorney. D.C. R. Prof. Conduct 5.3. In the Response and at the Motions Hearing, Counsel blamed, in large part, the failure of both her and the Debtor to attend a virtual § 341 meeting of creditors without a request to continue on the errors and omissions of her staff. In doing so, Counsel has violated RPC 5.3 because she is responsible for not only her actions, but the actions of all employees of the Kurland Law Firm. *In re Wenk*, 296 B.R. 719, 723-28 (Bankr. E.D. Va. 2002) (holding that an attorney may not shirk responsibility for errors by placing blame on her support staff). The Court is unpersuaded by Counsel's vague explanation as to as to why the § 341 meeting was missed and no communications were made with the chapter 13 trustee's office prior thereto. Counsel had the obligation to appear at the meeting from any location with internet connection via Zoom, she cannot overcome her professional responsibilities by placing the failure on staff whom she is charged with supervising.

In this case, and by her own admission, Counsel did not conduct any investigation into the Debtor's filing history or the accuracy of many aspects of the petition prior to submitting the petition to the Court. Furthermore, Counsel signed the following documents in this case, subject to the requirements of Rule 9011(b): the Initial Petition, the Second Petition, the *Disclosure of Compensation of Attorney for Debtor* (ECF No. 19), the Third Petition, the Fourth Petition, the Chapter 13 Plan. Each of the foregoing pleadings was filed on behalf of the Debtor through

Counsel's CM/ECF account. In addition to Rule 9011(b), his Court's Administrative Order Relating to Electronic Case Filing states that Counsel "is solely responsible for all documents filed via [Counsel's CM/ECF] password,"[12] meaning the veracity of each filing was solely the onus of Counsel, despite her repeated attempts to blame her support staff for the shortcomings enumerated herein. By submitting these deficient and incorrect filings with the Court, Counsel continuously made misrepresentations, each of which may individually have been sanctionable under Bankruptcy Rule 9011(b) of the Bankruptcy Code.

The Court finds that Counsel has violated Bankruptcy Rule 9011(b) by making representations to the Court in the Petition, Schedules, Statements, and other case opening documents and the various amendments that were not true and accurate and did not have a factual or legal basis after reasonable inquiry. Furthermore, the Court finds that Counsel's failure to have reasonable explanations for her failure to file other required pleadings (i.e. a motion to extend automatic stay, application to employ a realtor) in order to further the stated interest of the Debtor in preserving her interest in the Q Street Property had a direct impact on the Debtor's success (or, more accurately lack thereof) in this case. Finally, the Court finds that Counsel's argument at the November 4, 2021 hearing and the Response lack credibility and a sufficient or satisfactory rationale or explanation for the multitude of errors by Counsel in this case.

To determine the appropriate sanctions, the Court must evaluate "whether the misconduct was part of a pattern, whether the attorney has engaged in similar conduct in other litigation, what effect the misconduct had on the litigation process, whether the attorney is experienced in the area of law, and whether the conduct was willful or negligent." *In re Brent*, 458 B.R. 444, 462 (Bankr.

---

[12] *Admin. Pro. for Filing, Signing, and Verifying Docs. by Elec. Means*, Admin. Order Related to Elec. Case Filing, at 5, (Bankr. D.D.C. Nov. 18, 2013), available at https://www.dcb.uscourts.gov/sites/dcb/files/AdministrativeOrder.pdf.

N.D. Ill. 2011). What constitutes a "reasonable inquiry" under Bankruptcy Rule 9011(b) must be evaluated on a case-by-case basis under the totality of the circumstances. *See In re Tabor*, 583 B.R. at 186. In calculating an appropriate sanction, the Court must endeavor to impose sanctions most likely to achieve the deterrent effect of Bankruptcy Rule. In this case, the Court factors into its analysis Counsel's agreed disgorgement to the Debtor of $2,725 under the Consent Order as well as the fact that Counsel did assist the Debtor the process of completing a short sale of the Q Street Property, thus obtaining the Debtor's stated goal for the filing of this case. Taking into consideration the totality of the circumstances, the Court finds that a sanction in the amount of $2,200, the balance of the fees received from the Debtor in this case, is appropriate. But-for the previous disgorgement of fees to the Debtor, the Court's sanctions herein would have been higher.

### III.    Conclusion

Therefore, based upon a review of the docket, the materially inaccurate, incomplete, and omitted pleadings discussed herein, and upon consideration of proffers and arguments made by Counsel at the Motions Hearing and in the Response, the Court finds that Counsel has violated Bankruptcy Rule 9011(b). Therefore, pursuant to Bankruptcy Rule 9011(c) the Court will impose sanctions upon Counsel in the amount of $2,200, to be paid by certified funds to the Clerk of Court of the United States Bankruptcy Court for the District of Columbia within fourteen days of entry of this Order.

[Signed and dated above.]

Copies to: the Debtor, United States Trustee, all counsel of record.